Date signed December 17, 2013



_____
ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| Blackwater Enterprises, Inc. | * | Case No. 12-25471-RAG |
| | | Chapter 7 |
| Debtor | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION IN SUPPORT OF ORDER
DENYING RAINER ROSE'S MOTION FOR STAY PENDING APPEAL
AND FOR WAIVER OF SUPERSEDEAS BOND**

**I.   Introduction**

The question presented by Rainer T. Rose's Motion for Stay Pending Appeal and for Waiver of Supersedeas Bond (Motion for Stay) (Dkt. No. 127) filed on November 11, 2013 can be framed two ways.  A formulation charitable to Mr. Rose would be whether this Court's decision to deny Mr. Rose's Motion to Reconsider Order Granting Trustee's Motion to Sell Free and Clear at Docket #87 (Motion to Reconsider Sale) (Dkt. No. 95) was so filled with error as to insure Mr. Rose a strong likelihood of prevailing on appeal such that the equities demand that the *status quo* remain in place until the appeal is decided.  But that would not honestly reflect the realities of this case.  A frank construction would ask whether a single asset debtor entity and its principal, who have pushed, and perhaps torn, the envelope of bad faith while making no

1

progress towards solvency, should be given the opportunity to leverage a *bona fide* purchaser out of a legitimate contract of sale for the estates' sole asset and send this case into disarray on the basis of smoke and mirrors. The answer to either question is 'no'. This is so because (a) on the day of the hearing on the Trustee's proposed sale, Mr. Rose and the Debtor withdrew both their motion to dismiss the case and their proposed 'financing' motion and effectively surrendered to the inevitable, (b) the Motion to Reconsider Sale does not raise any arguments that Mr. Rose could not have raised at the sale hearing, and (c) the Motion to Reconsider Sale is without merit. Accordingly, the Motion for Stay will be denied.

## II.     Background

The Motion for Stay is intended to halt the Trustee's sale of 9843 Wades Point Road, Claiborne, Maryland (Wades Point), Debtor's sole asset, to WSD Capital, LLC (WSD). Through the Motion to Stay, Mr. Rose seeks to maintain the *status quo* while he appeals the Amended Order Granting Trustee's Motion to Sell Debtor's Real Property Located at 9843 Wades Point Road, Claiborne, Maryland 21624 Free and Clear of Liens, Claims, Encumbrances and Interests (Sale Order) (Dkt. No. 87), entered on August 12, 2013, and the Order Denying Motion to Reconsider Order on Motion to Sell Free and Clear of Liens Filed by Rainer Rose, Motion for 2004 Examination of Sean Logan Filed by Rainer Rose and Motion for 2004 Examination of Barry Waterman Filed by Rainer Rose (Order Denying Reconsideration) (Dkt. No. 123), entered on October 30, 2013.

Sean Logan, the Chapter 7 Trustee (Trustee) filed his Response and Opposition to Rainer Rose's Motion for Stay Pending Appeal and Wavier of Supersedeas Bond (Trustee's Response) (Dkt. No. 139) on November 27, 2013 and Severn Savings Bank (Severn), the largest secured creditor, filed its Response in Opposition (Severn Opposition) (Dkt. No. 141) on December 2,

2013. A hearing was held on December 11, 2013 (Stay Hearing) and the matter is now ripe for decision.

Mr. Rose characterizes himself as a "creditor" of the Debtor in the Motion to Stay. However, he is the President and (in this bankruptcy case) claims under oath to be the 100 *per cent* owner of Debtor.[1] Hence, at this juncture he is an equity interest holder. Nevertheless, there is no dispute that he is responsible for the Debtor's actions, or inactions, and the resulting consequences, since the case began.

Debtor filed its Voluntary Petition on August 23, 2012.[2] Beyond the filing of the schedules, statement of financial affairs and other documents necessary to minimally perfect the filing and insulate it from a quick dismissal, the Debtor took no further action to prosecute this case for the first four months.[3] Then, on January 8, 2013, the U.S. Trustee filed its Motion to Convert or Dismiss (Motion to Convert) (Dkt. No. 19). The Motion to Convert alleged that conversion or dismissal would be in the best interests of the estate because (a) the Debtor had not filed its monthly operating reports, (b) the Debtor had failed to pay its statutory quarterly fees and (c) the Debtor's 120 day exclusive period for filing a plan fixed by 11 U.S.C. Section 1121(b)[4] had expired without a proposed plan being filed. It was also noted that on January 7th,

---

[1] On September 28, 2011, Mr. Rose filed an individual bankruptcy case (Case No. 11-29470) which was dismissed on June 4, 2013 because of his default in plan payments. Schedule B in his personal filing states under oath that he only has a 50% interest in the Debtor while the Debtor's Statement of Financial Affairs (Dkt. No. 1) filed in this case under oath indicates that he is the sole (100%) owner.

[2] On July 20, 2006, Debtor filed its only prior bankruptcy case (Case No. 06-14245). That case was dismissed on April 26, 2007 due to the Debtor's failure to prosecute.

[3] Even Debtor's Application to Employ Counsel (Dkt. No. 11) was stricken for failure to file a certificate of service (Dkt. No. 15). No replacement application to employ counsel has been filed and, although Geri Lyons Chase has appeared on the Debtor's behalf at several hearings since, as a matter of law, she was not validly employed. 11 U.S.C. §327(a).

[4] Unless otherwise noted, all statutory citations are to the Bankruptcy Code (Code), found at Title 11 of the United States Code and all rule citations are to the Federal Rules of Bankruptcy Procedure (Rules).

Severn, the only secured creditor listed on the Debtor's Schedule D,[5] had filed a Motion for Relief from Automatic Stay (Lift Stay Motion) (Dkt. No. 17). The Lift Stay Motion alleged that neither the Debtor nor Mr. Rose had made any postpetition payments to Severn in either bankruptcy case. That, coupled with the Debtor's failure to file a plan within the first 90 days of the case, meant that the automatic stay would have to be lifted in Severn's favor pursuant to 11 U.S.C. Section 362(d)(3)(B). Hence, it was apparent that *prima facie* grounds mandating conversion under Section 1112(b)(4) were present.

Between the filing of the Motion to Convert and the February 27, 2013 hearing on the same, the Debtor filed an Application for Employment of Realtor (Dkt. No. 30) and a single monthly operating report (Dkt. No. 32). Both were filed the day before the hearing. At the hearing, the U.S. Trustee noted the above facts and added that the Debtor's Maryland corporate charter had been forfeited. The Debtor did not offer any evidence in support of its opposition to conversion or dispute any of the foregoing. Instead, the Debtor asked only that the case be allowed to remain in Chapter 11 to permit it to sell the real estate instead of a trustee. Because no defense was asserted and the Debtor's conduct amounted to, at a minimum, objective bad faith, the case was converted to Chapter 7 (Dkt. No. 34). Sean Logan was appointed the Chapter 7 Trustee.[6]

Debtor filed a Motion to Reconsider Order Converting Case on March 8, 2013 (Dkt. No. 41) (Motion to Reconsider Conversion). The Motion to Reconsider Conversion suggested there were "unusual circumstances" which established conversion was not in the best interest of

---

[5] The only other scheduled creditor was the Comptroller of Maryland, who was listed as being owed $1,800 for annual corporation fees. As it turns out, there are other creditors and lienholders that were not disclosed by the Debtor. Total potential lien claims are approximately $292,000. Debtor has objected to some, but not all, of these claims and, at a minimum, the unobjected to claimants, and other lien holders who did not file proofs of claim, will have all, or a portion of their claims, paid from the proceeds of the proposed sale (Dkt. No. 87, Claim Nos. 3-5).

[6] After the entry of the Order Granting U.S. Trustee's Motion to Convert Case to Chapter 7, Severn withdrew the Lift Stay Motion.

creditors. The circumstances were alleged to be the presence of equity in Wades Point and the risk that the Chapter 7 Trustee might not sell it for a sufficiently high price. As for the Debtor's neglect of its fiduciary duties, Debtor promised to cure its laundry list of defaults *if* the Chapter 11 was reinstated. The Motion to Reconsider Conversion did not allege anything that could not have been asserted at the February 8th hearing nor did it identify any error of law committed by the Court. *Pacific Ins. Co. v American Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Both the U.S. Trustee and Severn opposed reconsideration (Dkt. Nos. 43 & 44, respectively). The Court scheduled a hearing for April 23, 2013.[7]

At the April 23, 2013 hearing (where Mr. Rose now appeared with personal counsel) the Debtor asserted that the Trustee's listing price of $1.49 million for Wades Point was too low and that created an "unusual circumstance" in light of the real estate's "substantial" equity. Mr. Rose's attorney asserted that Mr. Rose was "very near" securing re-financing for Wades Point sufficient to pay Severn in full or, alternatively, that "Mr. Rose's realtor" should be given the opportunity to list the property in light of his familiarity with the real estate.

Severn objected to reconsideration, stating that bankruptcy had twice been used to forestall its foreclosure and it had not received any payments against the debt since September 2011. The Trustee indicated that since his appointment he had diligently marketed Wades Point and, moreover, that his research had uncovered no less than 14 judgments in the total approximate amount of $600,000 recorded against the entity known as "Blackwater, Inc.", the titleholder to the real estate.[8]

---

[7] On April 19, 2013, eight months after the filing of the case, the Debtor for the first time filed a proposed disclosure statement and plan (Dkt. Nos. 51 & 52, respectively).

[8] It appears that the Debtor's former name was "Blackwater, Inc." and, moreover, that at some point Mr. Rose created a related corporation also named "Blackwater, Inc.". While the exact number and value of liens against Wades Point is unclear, in part because of the resulting confusion, the record amassed since then supports the

The Court observed that the Debtor's utter failure to execute its fiduciary obligations as Debtor-in-Possession – including its now revealed failure to fully disclose substantial lien claims against its single asset – weighed heavily against the reinstatement of the Chapter 11. Moreover, the Court noted that a bankruptcy estate with equity is not unusual, and, if it was, then the Debtor had an obligation to make that case at the February 8th conversion hearing. Finally, the Court pointed out that if the Trustee attempted to sell Wades Point for too low a price, the Debtor and Mr. Rose could object. For those reasons, the Motion to Reconsider Conversion was denied (Dkt. No. 55).

On May 22, 2013, the Trustee filed the Motion to Sell. The proposed sales price is One Million Four Hundred Twenty Thousand Dollars ($1,420,000). In response, on June 17, 2013, Debtor filed a Motion for Authority to Incur Secured Debt (Financing Motion) (Dkt. No. 65) that sought the approval of a $1,050,000 loan. It was alleged that the proposed financing would be sufficient to pay Severn's claim, the State of Maryland ($1,800) and the Trustee's administrative costs. The proposed loan would be for a 12 month term with a possible 6 month extension and, apparently, would have been structured to pay itself interest during the 12 months. On the same day, Debtor filed a Motion to Dismiss (Dkt. No. 64) and an Opposition to Trustee's Motion to Sell Debtor's Real Property Located at 9843 Wades Point Road, Clairborne, Maryland 21624, Free and Clear of Liens, Claims, Encumbrances and Interests (Opposition to Sale) (Dkt. No. 63). The Opposition to Sale asserted that the Trustee's proposed contract was "unenforceable" and also alleged that the Debtor had a July 2012 appraisal of Wades Point that assigned it a value of $2,900,000 and that therefore, the Trustee's sale price was too low. The Opposition to Sale also challenged the validity of some of the judgment liens against Wades Point and tried to sort out

---

conclusion that there are significant liens against Wades Point that were not disclosed by Mr. Rose and the Debtor under oath in the Statement of Financial Affairs and Schedules.

the confusion created by the duplicative names of Mr. Rose's two companies. Both the Opposition to Sale and the Motion to Dismiss implied that Mr. Rose would, at some point, take steps to resolve in his favor the lien controversy in a manner sufficient to permit the refinancing of Wades Point for the amount sought in the Financing Motion. Severn and two other creditors opposed the Debtor's proposed course of action (Dkt. Nos. 74, 75 & 76).

      A hearing on the Motion to Sell was held on August 2, 2013 (Sale Hearing). Both the Debtor and Mr. Rose appeared, each represented by separate counsel. At the outset of the hearing, Debtor stated that its proposed financing had fallen through and its Financing Motion and Motion to Dismiss would be withdrawn. Neither Mr. Rose nor the Debtor sought to put on evidence as to the alleged July 2012 $2.9 million appraisal and Ms. Chase indicated on behalf of the Debtor that a new appraisal asserting a value of $1,770,000 for Wades Point had been obtained the prior week. Mr. Rose and the Debtor closed with the request that an auction sale should be authorized.

      The Trustee indicated that he had listed the real estate at $1.49 million, had diligently marketed it, and had received a fair volume of traffic and interest. He also indicated that the contract on the table – for a price of $1.42 million – reflected the highest bid received and that the next highest bidder was unwilling to go higher. The Trustee asserted his belief in the quality of his marketing and his choice to market the property privately as opposed to conducting an auction. Severn indicated that in addition to the ongoing lack of payments against its debt, the real estate taxes were continuing to accrue unpaid and it was firmly in support of the Motion to Sell. Likewise, J.P. Exterior (J.P.) and Willow Construction, Inc. (Willow) (two of the unrevealed judgment creditors) also voiced their support for the Motion to Sell. The Trustee's real estate agent, Barry Waterman, was available in the courtroom to testify, but neither the

7

Debtor nor Mr. Rose called him, or anyone else, to the witness stand. Nor did they submit any evidence in opposition to the Motion to Sell or evidence that might establish why an auction sale would be a better option. In essence, the *bona fides* of the Trustee's proposed sale greatly outweighed the Debtor's remaining claim – that Wades Point should be sold via auction – and for these reasons, the Motion to Sell was approved. The Sale Order was entered on August 12, 2013 (Dkt. No. 87).

On August 26, 2013, Mr. Rose, now represented by a different lawyer, filed his Motion to Reconsider Sale. The Motion to Reconsider Sale was ostensibly made under Fed. R. Civ. P. 60 (as incorporated by Rule 9024) although no specific provision of Rule 60, nor any case law, was cited. The Motion to Reconsider Sale averred that, 1) the Trustee's marketing efforts had been deficient and that was why the sales price was well below the alleged $2.9 million appraisal value and 2) the Trustee's notice of the Motion to Sell misrepresented Mr. Waterman's valuation of Wades Point as an "appraisal" despite Mr. Waterman not being a licensed appraiser.[9] Neither of these arguments were raised at the Sale Hearing. Both Severn and the Trustee opposed reconsideration (Dkt. Nos. 99 & 103, respectively). They argued among other things that the Motion to Reconsider Sale sought to raise issues which Mr. Rose could and should have raised prior to the approval of the sale and that no evidence had been presented that another method of marketing Wades Point would obtain a higher offer. A hearing on the Motion to Reconsider Sale was held on October 22, 2013.[10]

The Court noted that the Motion to Reconsider Sale was, at its heart, an attempt to litigate issues regarding the adequacy of the sale which both Mr. Rose and the Debtor had the

---

[9] Based upon the assertion that the Trustee had misrepresented the truth in the notice of sale, it appears Mr. Rose was requesting relief under Rule 60(b)(3).

[10] The Debtor also sought leave to conduct a 2004 examination of the Trustee and his realtor (Dkt. Nos. 96 and 97, respectively).

opportunity to, but did not, litigate at the Sale Hearing.  The Court also noted the history of the case and concluded that the estate and creditors would be much better served by the Trustee's sale than the nullification of the same and an open-ended interregnum while Mr. Rose searched for the elusive solution for his insolvency that he had not found since before the case was filed.  The Trustee's proposed sale, supported by all creditors present, was the only viable option.  For those reasons, the Order Denying Reconsideration was entered.

Mr. Rose filed a notice of appeal and then filed the Motion for Stay.  The Motion for Stay is less than two pages and cites neither rules nor law.  In substance, it states in full:

> The principal matter complained of by the Appellant on this appeal will be that the Trustee failed to obtain the highest and best price for the Property and that the Trustee failed to adequately value and market the Property.
>
> Since the Orders appealed from necessarily grant the Trustee the right to sell the Property, the appeal will be moot should the trustee do so.
>
> No party will be prejudiced by the granting of a Stay Pending Appeal.  The Property is either adequately insured or additional insurance can be placed as a condition of the Stay Pending Appeal.  The largest portions of the Property are bare or wetlands without improvements and as such are not subject to waste or demise.  Further, the Appellant contends that the Property will garner a higher price by more market exposure, not a lower price, so the Bankruptcy Estate is not prejudiced.

At the Stay Hearing, Mr. Rose asserted that the significant equity in Wades Point would protect creditors from prejudice if the Trustee's sale fell through and Mr. Rose would suffer substantial prejudice if the sale was not stayed.  Mr. Rose sought to testify about payments he allegedly made on one of the judgment lien claims but the Trustee's objection was sustained on the ground of relevancy.  Although Mr. Rose claimed to have a new lender in the courtroom, he declined to call him to the stand.  The Trustee called the owner of WSD, who testified to his inability to

9

continue to wait for settlement.  As should be clear to the reader, this Court is not inclined to grant the requested stay.

## III. Analysis

An appellant who seeks a stay pending appeal must show that:

> (1) there is a likelihood of success on the merits of the appeal; (2) he will suffer irreparable injury if the stay is denied; (3) other parties will not be substantially harmed by the stay; and (4) the public interest will be served by granting the stay.

*Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.,* 550 F.2d 189, 193 (4th Cir. 1977) *overruled in part by, Real Truth About Obama, Inc. v. FEC,* 575 F.3d 342 (4th Cir. 2009); *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970); *Ohio Valley Envtl. Coalition, Inc. v. U.S. Army Corps of Engineers,* 890 F.Supp.2d 688, 690 (S.D. W.Va. 2012); *In re Harenberg*, 491 B.R. 706, 716 (Bankr. D. Md. 2013). [11]  The burden rests on the moving party to establish each element, *Long,* 432 F.2d at 979, and this Court concludes that Mr. Rose has satisfied none of them.

    a.    *Whether Mr. Rose has a Likelihood of Success on the Merits*

In order to obtain a stay pending appeal without posting a bond, a strong showing of likelihood of success on the merits is necessary.  *Ohio Valley*, 890 F.Supp.2d at 93.  That means Mr. Rose must establish that the Order Denying Reconsideration will likely be reversed.  The starting point for evaluating the quality of that decision begins with the Sale Hearing itself. Whether the Motion to Reconsider Sale is viewed as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e) (made applicable through Rule 9023) or as a motion for relief from judgment or order under Fed. R. Civ. P. 60b(b)(3) (made applicable through Rule 9024), it is

---

[11] The Court in *Ohio Valley* endeavored to determine what, if any, impact *The Real Truth* decision had on the criteria for granting a stay pending appeal in light of *The Real Truth*'s revision of the preliminary injunction standard.  The *Ohio Valley* court concluded that for purposes of securing a stay pending appeal, (1) a party need not make an independent showing as to each prong of the test, (2) that a weaker position on one of the prongs may be buttressed by the factoring in of significantly stronger position on others and (3) a strong showing of likelihood of success on the merits (as opposed to a showing of a 'serious question' presented) was needed to secure a stay pending appeal.  890 F. Supp.2d at 692-93.  In this case however, Mr. Rose fails on each of the test's four prongs.

certain that in either instance, the rules may not be used to raise issues that Mr. Rose had a full and fair opportunity to raise at the original hearing but failed to do so. In *Pacific Ins. Co.*, 148 F.3d at 403, the Court stated:

> There are three grounds for amending an earlier judgment [under Rule 59(e)]: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.
>
> \*          \*          \*
>
> Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance.

Likewise, in order to prevail on a Rule 60(b)(3) motion a party must, "(1) have a meritorious defense, (2) that he was prevented from fully presenting before judgment, (3) because of the adverse party's fraud, misrepresentation, or misconduct." *Green v. Foley*, 856 F.2d 660, 665 (4th Cir. 1988). The misconduct must be established by clear and convincing evidence. *Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir. 1994).

Nothing prevented Mr. Rose from asserting his alleged objections at the Sale Hearing. He could have put on evidence regarding the value of Wades Point and any deficiencies in the Trustee's marketing. Likewise, he could have complained about the quality of the Trustee's sale notice and whether the mischaracterization of Mr. Waterman's evaluation as an "appraisal" was prejudicial. But Mr. Rose did none of this. Instead, he withdrew his Financing Motion and his Motion to Dismiss and suggested through his counsel's less than compelling proffers that an auction sale might yield a better result. Because none of the claims now raised were previously asserted, Mr. Rose cannot legitimately seek relief under either of the revisory rules.

Moreover, the Motion to Reconsider Sale is meritless standing alone. At the Sale Hearing, the Debtor asserted through counsel that an appraisal obtained "last week" assigned a

value of $1.7 million to Wades Point. That appraisal was not offered into evidence but even if such an appraisal existed and it had come into evidence, it would have fallen well short of convincing the Court that the proposed sale should be nullified. The sales price is approximately eighty per cent (80%) of the appraisal value as alleged by Mr. Rose. Moreover, there was no evidence that the actual proposed sales price – *the money that WSD is willing to spend* – is not the best price available in the market place, regardless of an opinion expressed in an appraisal. In other words, no competing bids were produced.[12] In that regard, with no evidence of collusion or impropriety, or anything to establish that the sale is less than "arms length", an appraisal is speculative at best when compared to the marketplace's final word.

Finally, the assertion that it was prejudicial for the Trustee to describe Mr. Waterman's estimate of value as an appraisal (because he is not a licensed appraiser) is even less compelling. The notice is meant to inform creditors and parties in interest of the Trustee's contemplated action and give them an opportunity to object. There was no evidence that the error caused any real prejudice, somehow injured the estate, or served to chip away at the *bona fides* of the sale. No objections other than Mr. Rose's were filed and each creditor that appeared supported the sale. Would it make sense under these circumstances to require the Trustee to re-notice the sale to correct any possible mis-impression? Only Mr. Rose would vote in favor of that option. Hence, while the Oversigned does put a premium on precision and accuracy, in this case, the pursuit of perfection should give way to meaningful progress. For these reasons, the Court concludes that there is a less than negligible likelihood that Mr. Rose will prevail on appeal.[13]

---

[12] The Trustee attached an Exhibit "A" to his Response to the Motion to Reconsider Sale that he asserts is a copy of an unauthorized listing of Wades Point by Mr. Rose for $3,000,000.

[13] The Severn Opposition also raises the argument that Mr. Rose, as a shareholder of the Debtor, does not have standing to pursue an appeal. While this is for the District Court to decide, Severn's argument is well-supported and will prove an additional hurdle to Mr. Rose's success upon the merits. Mr. Rose did not respond to this argument.

  b.  *Whether Mr. Rose will Suffer Irreparable Injury if the Stay is Denied*

  The Court denies the requested stay with a clear understanding (and hope) that the sale of Wades Point will close in the very near future. Mr. Rose complains that this will prejudice his interests. The Court disagrees. Mr. Rose's argument is based upon the premise that somehow, some way, Wades Point can be sold for more money. On this point, the Court concludes that the Trustee had every legitimate incentive to sell Wades Point for the highest price and the market place has now spoken. Apparently, the Trustee believes there will be several hundred thousand dollars left on the table for Mr. Rose after the costs of sale and legitimate liens are paid. To the extent this real estate could have yielded more if nurtured properly, then Mr. Rose only has himself to blame. His opportunity to do so has been frittered away over the past few years and the string has now run out. Because it does not appear that any other reasonable process will yield a greater return, the Court concludes that there is no prejudice to Mr. Rose. And if there is any prejudice to him, it is greatly outweighed by that suffered by Severn and the other creditors.

  As Judge Winter wrote in *Long*,

> [T]he principal irreparable injury which defendants claim they will suffer if the order is not stayed is injury of their own making. The defendant…has postponed the moment of truth as long as possible, but the moment of truth is now at hand. It would seem elementary that a party cannot claim equity in his own defaults.

432 F.2d at 981.

  c.  *Whether Other Parties will not be Substantially Injured by the Stay*

  Mr. Rose's creditors will be substantially injured by the entry of a stay, which, at a minimum, seems likely to scare WSD out of the picture to no good end. Severn, for example, alleged in its proof of claim that it is owed seventeen months of prepetition payments. Nor has there been any indication that Debtor or Mr. Rose, who is listed as a co-debtor to Severn in

Schedule H, have made regular postpetition payments to Severn.[14]  Other creditors have waited over a year while Debtor and Mr. Rose have delayed making payment on their debts.[15]  Mr. Rose contends that torpedoing the sale to WSD will only result in a delay before creditors are paid in full. But he has not identified a realistic way forward to realize his promise. Here, a bird in the hand is plainly more valuable than two in the bush and the Court concludes that creditors will be substantially injured by the stay.

> d. *Whether the Public Interest will be Served by the Grant of the Stay*

The public interest in this instance falls squarely on the side of the creditors.  Mr. Rose has had ample opportunity to reorganize the Debtor and then to put forward a real alternative to the Trustee's sale.  There is no legitimate interest, public or otherwise, to be served by allowing Mr. Rose to continue to pursue phantom alternatives at the service of his interests alone.

**V.   Conclusion**

For all the reasons stated above, a stay pending appeal is inappropriate in this case.  Accordingly, a separate order denying the Motion for Stay shall be entered.

---

[14] Debtor's Opposition to Motion for Relief from Stay (Dkt. No. 22) states that payments to Severn will be made through Mr. Rose's Chapter 13 Plan.  However, Mr. Rose's Chapter 13 case was dismissed for failure to make plan payments on June 4, 2013 on a Motion to Dismiss filed by the Chapter 13 Trustee on January 4, 2013.  The Chapter 13 Trustee's Final Report indicates that $15,189.16 was paid to Severn through the Plan.  However, the case moved in fits and starts and was ultimately dismissed when Mr. Rose tried to tender a bad check written on a closed account in the amount of $7,727.31 to the Chapter 13 Trustee to cure a three month default (Case. No. 11-29470, Dkt. Nos. 108 & 109).

[15] Mr. Rose orally represented at the Stay Hearing that he had made a substantial payment to Atlantic Bonding Company, Inc. (Atlantic Bonding).  According to its claim, Atlantic Bonding holds a 2005 mortgage on both Mr. Rose's residence and Wades Point and that likely explains Mr. Rose's sudden willingness to make a payment.  As for other creditors, J.P.'s judgment was entered in 2005 and Willow's was entered in 2008.

cc:  Counsel to Mr. Rose – Tate Russack, Esquire
 Counsel to Debtor – Geri Lyons Chase, Esquire
 Counsel to U.S. Trustee – Edmund A. Goldberg, Esquire
 Chapter 7 Trustee – Sean Logan, Esquire
 All creditors on the mailing matrix

**End of Opinion**